**SO ORDERED.**

**SIGNED this 11 day of March, 2009.**



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE

_____

DESIGNATED FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GEORGE WILLIAM SAUER, | ) | Case No. 08-11663 |
| DARLA ALLENE SAUER, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

The chapter 7 trustee Steven Speth objects to joint debtors' claim of two separate homestead exemptions under Kansas law.[1] Debtors are married, but were separated on the date of the petition and remained separated at the time of trial. Creditor Bank of America seeks stay relief on the property claimed exempt by George Sauer due to his payment default on the note.[2] Trial of these

---

[1] Dkt. 19.

[2] Dkt. 9.

-1-

contested matters was held February 17, 2009.³  Steven Speth appeared personally.  Bank of America appeared by its attorney Tricia Oldridge.  Debtors appeared in person and by their attorney William Fields.

Jurisdiction

These contested matters are core proceedings under 28 U.S.C. § 157(b)(2)(B) and (G).  This Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and § 157(b)(1).

Factual Background

The facts are not in dispute.  Debtors filed their joint voluntary petition on July 11, 2008. Debtors listed two parcels of real estate on Schedule A.  One parcel was located in Lakin, Kansas with a scheduled value of $85,000 and a secured claim of approximately $37,000.  The second parcel was located in Kinsley, Kansas with a scheduled value of $60,000 and a secured claim of approximately $34,000.  Both tracts were within the city limits of the respective towns, but the Kinsley property includes "eight contiguous/adjoining acres."  On Schedule C, both properties are claimed exempt as debtors' homesteads under the Kansas homestead exemption, KAN. STAT. ANN. § 60-2301.  George resides in the Kinsley property and claims it as his homestead.  Darla resides in the Lakin property with their high-school age son and claims it as her homestead.

According to the uncontested testimony of debtors at trial, George and Darla were married in 1981.  They owned the Lakin property 27 years and lived together at the Lakin property until June of 2008.  In 1996 or 1997 they purchased the Kinsley property.  They refinanced the Kinsley property with Bank of America in 1999.  No tenants occupied the Kinsley property after its purchase

---

³ The trustee also originally objected to debtors' claim of exemption in a camper and lawnmower as household goods but announced at trial that he was withdrawing his objection to those claims of exemption. *See* Dkt. 21.

-2-

and it remained vacant until George moved in shortly before filing bankruptcy. George explained the reason for buying the Kinsley property – that he liked it and thought he might like to live there. Kinsley and Lakin are approximately 115 miles apart. Four to six weeks before filing their bankruptcy, George's financial difficulties led to garnishment or collection activity against him and his wife. Darla was upset over George's financial troubles and the garnishments and they separated. George moved out of the Lakin property and into the Kinsley property.[4] No divorce has been filed because as George described it, he cannot afford to pay a lawyer for a divorce proceeding. From all indications from both George and Darla, there is little likelihood of a reconciliation or George moving back to the Lakin property. Both expressed their intent to remain at their respective residences indefinitely.

George is employed in large construction equipment sales. He travels a large portion of the time in connection with his job. He testified that he is remodeling the Kinsley property by installing insulation, re-plumbing it, and re-wiring it. He furnishes his own utilities to the Kinsley property by means of a generator. George and Darla filed a joint tax return for the year 2007, showing a Lakin address.[5] Because of the tax savings associated with filing jointly, George testified that they will file a joint tax return for 2008 as well.

With respect to the Bank's stay relief motion, it is undisputed that George has not made any mortgage payments on the Kinsley property since May of 2008. The mortgage payments are some

---

[4] Darla remained in the Lakin property. At the time of filing their bankruptcy petition, Darla lived in the Lakin property and George lived in the Kinsley property.

[5] It appears from the chronology of events that the 2007 tax return was prepared and filed before George and Darla separated.

-3-

$568 a month.⁶ Both Darla and George are borrowers under the note and mortgage.⁷ George acknowledged that he is in arrears on the note on the Kinsley property but contends that his brother will help him cure the arrearage if he is allowed to exempt the Kinsley property as his homestead. In addition, debtors' counsel suggested that a mortgage loan work-out under the Housing Education Program was possible, citing correspondence debtors received in July 2008.⁸

On August 27, 2008, the trustee timely objected to debtors' claim of homestead exemption under Fed. R. Bankr. P. 4003(b)(1).⁹ The objection to exemptions were set over to a scheduling conference and then to an evidentiary hearing that was subsequently continued at the request of debtors to the current February 2009 setting.

Analysis

I.  **The Objection to Homestead Exemption Issue**

The trustee, as the party objecting to debtors' claim of exemption, bears the burden of proving that the exemption is not properly claimed.¹⁰ Here, however, there are no factual issues concerning the debtors' intent, use or occupancy as a residence, or abandonment. The exemption issue presented to this Court is a pure question of law. Namely, does the Kansas homestead exemption, KAN. STAT. ANN. § 60-2301 (2005), allow married, but separated, persons to each claim a separate homestead exemption?

---

⁶ Ex. 3.

⁷ Ex. 1 and 2.

⁸ Ex. 4.

⁹ Debtors' § 341 meeting was held and concluded on August 21, 2008.

¹⁰ Fed. R. Bankr. P. 4003(c).

-4-

In arguing that it does, debtors focus on the liberal construction afforded the homestead exemption under Kansas law, the trustee's burden of proof, and the absence of any express prohibition in the exemption statute precluding married persons from claiming different homesteads. In arguing that it does not, the trustee points to the statutory language of the homestead exemption itself and a comparison to the language utilized in other statutory exemptions.

This Court is not writing on a clean slate on this issue. Judge Karlin recently addressed this issue, albeit in a different factual setting, in *In re Hall* and held under the factual circumstances of that case, that married, separated debtors could each claim a different exemption.[11] The Court will address the *Hall* decision in more detail later in this opinion.

### A. Kansas Homestead Exemption, KAN. STAT. ANN. § 60-2301

Kansas is one of those states that has opted out of the federal exemption scheme in bankruptcy and therefore, Kansas debtors are limited to state law exemptions.[12] Kansas statutorily provides for a homestead exemption at KAN. STAT. ANN. § 60-2301.[13] It states, in relevant part:

> *A homestead to the extent of* 160 acres of farming land, or *of one acre within the limits of an incorporated town or city*, or a manufactured home or mobile home, *occupied as a residence by the owner or by the family of the owner, or by both the owner and family thereof,* together with all the improvements on the same, shall be exempted from forced sale under any process of law and shall not be alienated without the joint consent of husband and wife, when that relation exists;[14]

George and Darla's right to claim the homestead exemption is determined as of the date of their

---

[11] 395 B.R. 722 (Bankr. D. Kan. 2008).

[12] *See* 11 U.S.C. § 522(b) and KAN. STAT. ANN. § 60-2312(a).

[13] *See Kansas Homestead Law*, 65 J. KAN. B. ASS'N. 20 (Apr. 1996) for an overview of the Kansas homestead exemption.

[14] Emphasis added.

-5-

bankruptcy petition.[15]

Many of the legal principles for determining a debtor's right to the homestead exemption are recited in *In re Hall.*

> In bankruptcy . . . the claimed exemption is presumed to be valid and the Trustee has the burden of producing positive and clear evidence to rebut the presumption. If she does so, the burden thereafter shifts back to Debtors to come forward with evidence to demonstrate that the claimed exemption is proper. The party claiming the homestead interest may properly testify as to his or her intent regarding a proposed return to the property, and such testimony is sufficient to support a finding that the property remains a homestead.
>
> To determine the validity of Debtors' claimed homestead exemption, the Court must look to applicable Kansas law. . . . "In determining whether a debtor is entitled to claim an exemption, 'the exemption laws are to be construed liberally in favor of exemption.'"
>
> To determine the merits of the Trustee's objection, there are a number of legal and factual issues that must be resolved. First, the Court must determine whether, under Kansas law, married debtors filing a joint bankruptcy petition may each claim separate tracts of property as their homestead.[16]

This Court does not take issue with the *Hall* court's recitation of the principles pertaining to claims of exemption and objection thereto. It does, however, note that the Tenth Circuit Court of Appeals has applied a preponderance standard of proof for the objecting party in a bankruptcy setting, as opposed to a "positive and clear eviden[tiary]" standard under Kansas law.[17]

Because there are no factual disputes here, the Court views the issue presented here as one

---

[15] *In re Robinson,* 295 B.R. 147, 153 (10th Cir. BAP 2003).

[16] 395 B.R. at 728-29 (footnote citations omitted).

[17] *In re Hodes*, 402 F.3d 1005, 1010 (10th Cir. 2005). *See also, In re Robinson*, 295 B.R. at 152. (A claimed exemption is presumed to be valid and the objecting party bears the initial burden of producing evidence to rebut the presumption. The burden then shifts back to the debtor to come forward with evidence to demonstrate that the claimed exemption is proper. Debtor has the ultimate burden of demonstrating a right to the claimed exemption under state law.) *Cf. In re Estate of Fink*, 4 Kan. App. 2d 523, 527, 609 P.2d 211 (1980).

-6-

of statutory interpretation and a pure question of law. This Court is therefore compelled to review and apply the rules of statutory construction in interpreting Kansas' homestead exemption statute.[18] The starting point in all cases of statutory interpretation is to ascertain the intent of the legislature if that intent can be ascertained.[19] Ordinary words are to be given their ordinary meanings.[20] If the statute is plain and unambiguous, the court must give effect as expressed, rather than determine what the law should or should not be.[21] It is appropriate to consider and compare language contained in other exemptions provided in Article 23 of the Kansas Statutes.[22]

And perhaps most pertinent in the instant case, a court cannot interpret a statute in a way that is fundamentally inconsistent with, or ignores, the statute's plain language under the guise of liberal construction.[23] While a court should bear in mind that exemption statutes are construed liberally so as to affect their beneficent purposes, a court interpreting the statute is still limited by what the

---

[18] This Court has uncovered no state law controlling precedent of this homestead exemption issue. It must therefore attempt to predict how the Kansas Supreme Court would interpret the homestead exemption under this set of facts. *See F.D.I.C. v. Schuchmann*, 235 F.3d 1217, 1225 (10th Cir. 2000); *Garcia v. Estate of Arribas*, 363 F. Supp. 2d 1309, 1314 (D. Kan. 2005); *In re Carlson*, 303 B.R. 478, 483 n. 8 (10th Cir. BAP 2004).

[19] *Trees Oil Co. v. State Corp. Comm'n,* 279 Kan. 209, 105 P.3d 1269 (2005); *Marshall v. Kansas Medical Mut. Ins. Co.,* 276 Kan. 97, 101, 73 P.3d 120 (2003); *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 76, 150 P.3d 892 (2007).

[20] *Phillips v. St. Paul Fire & Marine Ins. Co.,* 39 Kan. App. 2d 758, 761, 184 P.3d 280 (2008); *American General Financial Services, Inc. v. Carter*, 39 Kan. App. 2d 683, 686, 184 P.3d 273 (2008); *GT, Kansas, L.L.C. v. Riley County Register of Deeds*, 271 Kan. 311, 316, 22 P.3d 600 (2001).

[21] *Phillips, supra* at 761.

[22] *Marshall, supra* at 101; *American General Financial Services, Inc., supra* at 686. (The legislative intent is to be determined from considering the entire act and every part thereof).

[23] *Three Ten Enterprises, Inc., Foam Form v. State Farm Fire & Casualty,* 24 Kan. App. 2d 85, 90-91, 942 P.2d 62 (1997); *In re Duncan*, 294 B.R. 339, 342-43 (10th Cir. BAP 2003).

terms of the statute can fairly be said to embrace.[24] The Kansas exemption laws are intended to secure to an unfortunate debtor and his family the means to avoid destitution.[25] The homestead provision was established for the benefit of the family and of society – to protect the family from destitution and to protect society from the danger of her citizens becoming paupers.[26]

With these guiding principles, the Court turns first to the language of Kansas' statutory homestead exemption, § 60-2301. As the trustee suggests, the lead-in language of the statute suggests an intent to grant a single homestead for the family unit: "<u>A homestead</u> . . . of one acre within the limits of an incorporated town or city . . . occupied as <u>a residence</u> . . . ." This language can be contrasted with the personal property exemptions in KAN. STAT. ANN. § 60-2304, which state: "<u>Every person residing in this state</u> shall have exempt . . . the following articles of personal property . . . ." This distinction explains why each debtor in the case of a joint petition, may exempt a vehicle, jewelry, household goods, and tools of the trade.

If the legislature had intended to grant a homestead exemption to every person in this state occupying a residence it could have so provided. Indeed, some states' homestead exemption statutes expressly so provide. For example, in Wyoming, "every resident of the state" is entitled to a homestead exemption if the property is occupied as a homestead by the owner or his or her family.[27]

---

[24] *See In re Kwiecinski,* 245 B.R. 672, 675 (10th Cir. BAP 2000); *Nohinek v. Logsdon,* 6 Kan. App. 2d 342, 345, 628 P.2d 257 (1981).

[25] *Nohinek, supra* at 343.

[26] *Anderson v. Shannon*, 146 Kan. 704, 73 P.2d 5 (1937).

[27] *See In re Duncan*, 294 B.R. 339 (10th Cir. BAP 2003) (spouse of debtor was not entitled to claim homestead exemption in property she resided, but had no ownership interest). Wyoming's homestead exemption is limited to $10,000 while Kansas' homestead exemption is of an unlimited dollar amount.

Case 08-11663   Doc# 67   Filed 03/11/09   Page 8 of 18

Moreover, the Wyoming homestead exemption expressly authorizes a joint owner to claim the *same* residence exempt if they both occupy it.[28] Thus, Wyoming allows a spouse to claim a separate or concurrent homestead exemption if the spouse otherwise meets the ownership and occupancy requirements.[29] The Kansas homestead exemption statute reads very differently.

While it is true that § 60-2301 does not expressly prohibit married, but separated, debtors from claiming separate homestead exemptions, the statute does not expressly permit it either. The language of the statute suggests there is but one residence or homestead available to the family unit.[30] It requires occupancy of "<u>a residence</u> by the owner or by the family of the owner, or by both the owner and family thereof." It says nothing about claiming exempt multiple, different residences occupied by different owners or by the family of the owner. Interpreting the homestead exemption in this fashion would run counter to preserving the family or benefitting the family. The Court observes that the Kansas statute does not expressly require contiguous acreage or tracts either. But the requirement that the acreage be contiguous has long been applied by the Kansas courts.[31] If the married debtors are permitted to claim exempt different homesteads in this case, the exemptions would exceed the acreage limits of the statute and the contiguity requirement imposed by the case law. The two homesteads are located 115 miles apart and would consist of at least two acres, rather

---

[28] *Id.* at 342. ("When two (2) or more persons jointly own and occupy the same residence, each shall be entitled to the homestead exemption.")

[29] *In re Duncan, supra.*

[30] *See Atchison Sav. Bank v. Wheeler's Adm'r,* 20 Kan. 625 (1878) (The law does not recognize two homesteads for one family). *See also In re Pruitt,* 829 F.2d 1002 (10th Cir. 1987) (applying Colorado law, whether realty is jointly or singly owned, there is only one homestead)

[31] *See In re Piersol*, 35 B.R. 121 (D. Kan. 1983) (10 acre tract with house and 150 acre parcel of noncontiguous farmland; debtors could not exempt the 150 acre noncontiguous tract as their homestead.).

Case 08-11663    Doc# 67    Filed 03/11/09    Page 9 of 18

than one.

In addition, it appears to the Court that George's exemption of the Kinsley property as his homestead exceeds the one acre limit. There was no testimony at trial that the Kinsley property was situated on "farming land" to entitle George to exempt 160 acres. From the evidence presented, the Kinsley property was located within the city limits of Kinsley, thus limiting debtor's exemption to one acre. According to debtors' Schedule A, however, the location of the Kinsley property bears a city street address, 601 S. Elizabeth, and includes "about eight contiguous/adjoining acres." It therefore exceeds one acre. On this basis alone, George's claim of exemption can be denied.

George and Darla's ownership interests in the Kinsley and Lakin properties was not entirely clear from the evidence presented at trial. It appears that they acquired the Lakin property and jointly owned if for over 25 years. There was no indication at trial that Darla was the sole owner of the Lakin property.[32] Likewise, both George and Darla are identified as the borrowers and mortgagors on the Kinsley property.[33] The Court suspects that debtors, as part of their separation, have informally agreed to divide these two properties between them.

Nothing in Kansas law suggests that married debtors can each claim separate homestead exemptions. To the contrary, *Commerce Bank of Kansas City v. Odell* suggests that married or joint owners of property must share a single homestead exemption.[34] While the facts in *Odell* are distinguishable, the Court of Appeals opinion provides guidance to this Court on the Kansas courts' view of expanding the homestead exemption beyond the terms of the statute. In *Odell*, the parties

---

[32] Schedule A shows Darla as the sole owner of the Lakin property.

[33] Schedule A shows George as the sole owner of the Kinsley property.

[34] 16 Kan. App. 2d 704, 827 P.2d 1205 (1992).

-10-

had divorced prior to acquiring, as joint tenants, a 240 acre tract. Although they incurred debt jointly and even signed a mortgage as "husband and wife" after their divorce, both parties adamantly denied being married. Commerce Bank obtained a judgment against both Odells for an unsecured credit card debt. Thereafter, both Mr. and Mrs. Odell filed homestead designations pursuant to KAN. STAT. ANN. § 60-2302, each claiming an undivided one-half interest in the 240 acre tract, or 120 acres per claimant. The bank challenged this exemption.

> The Kansas Court of Appeals stated the issue as follows:
>
> The issue on appeal is whether two defendants, who jointly own a 240-acre parcel of land, are entitled to a separate homestead exemption of up to 160 acres each . . . or whether they are only entitled to each declare an 80-acre exemption or to declare a one-half joint interest in a 160-acre exemption.[35]

The *Odell* court concluded that the 1942 Kansas Supreme Court decision of *Nelson v. Stocking* answered the question "rather directly."[36] *Nelson* held that a debtor claiming an exemption in property he holds as a common tenant may claim his undivided interest exempt, but only up to the statutory maximum acreage allotted by the exemption provisions. The *Odell* and *Nelson* courts focused on the language of the statute; it allows a homestead "to the extent of 160 acres." By its express terms, it could not be extended to embrace more than 160 acres. The *Odell* court expressly rejected the argument that the expansion of the homestead exemption from heads of household to owners and family of owners required an expansive interpretation of the homestead exemption.

> . . . we note that the amendment expanding the class of people allowed to claim the exemption did not expand the *amount* of land that could be claimed thereunder.[37]

---

[35] 16 Kan. App. 2d at 706.

[36] *Id.* at 707, citing *Nelson v. Stocking,* 154 Kan. 676, 121 P.2d 215 (1942).

[37] *Id.* at 709.

-11-

Thus, the defendants in *Odell* could claim only 160 acres exempt, and not 240 acres.

Perhaps even more pertinent to the case at bar is the *Odell* court's implicit recognition that a married couple likewise *shares* one homestead exemption. The Court of Appeals found that the trial court erred in treating the defendants in *Odell* as husband and wife but that common or joint tenants may only claim the statutory maximum–

> While both the plaintiff and the trial court agree that the defendants should be treated as a married couple, this is not possible. . . . And since the plaintiff does not contend that the 1984 divorce decree is invalid, this court will proceed in determining if two single people who jointly own real property can each declare the full homestead exemption allowed by law.[38]
>
> * * *
>
> Although the trial court was incorrect in finding that the defendants could only claim a 160-acre homestead as a husband and wife, it was correct in finding that a 160-acre exemption was all that could be claimed by the owners.[39]

In short, the Court of Appeals held that the trial court in *Odell* was right for the wrong reason. This Court therefore concludes that in either case – married debtors or debtors who jointly own property – are limited to and must share a homestead exemption "to the extent of" the statutory maximum, 160 acres of farming land or one acre within city limits. The interpretation the Court reaches today finds some support from other bankruptcy courts interpreting similar homestead exemptions of other states.[40]

---

[38] *Id.* at 706.

[39] *Id.* at 709.

[40] *See e.g., In re Rowe*, 236 B.R. 11 (9th Cir. BAP 1999) (Applying Nevada law, a married couple filing a joint bankruptcy petition but living apart, may not claim a homestead exemption in their separate residences); *In re Roberts*, 211 B.R. 696 (Bankr. D. Neb. 1997) (Applying Nebraska law, married couple that was separated on petition debt and contemplating a divorce, were eligible for homestead exemption); *In re Gunnison*, 397 B.R. 186 (Bankr. D. Mass. 2008) (Applying Massachusetts law, husband and wife who were legally married, but living

-12-

Accordingly, to permit the married debtors in this case to, in effect, exempt at least two non-contiguous acres, would be to disregard the plain words of § 60-2301 and be an unwarranted expansion of the homestead exemption. Debtors are entitled to exempt as their homestead, no more than one acre within city limits. The trustee's objection to the debtors' claims of homestead exemption should be sustained.

Before addressing the *Hall* decision, the Court notes the danger of abuse and fraud if it were to adopt the debtors' interpretation of the homestead exemption statute advocated here, particularly upon these facts. It has the potential to "encourage" married debtors to create separate homesteads shortly before filing bankruptcy in order to shield property that would otherwise be available to pay claims of creditors. It could lead to the situation of debtors separating right before bankruptcy, establishing separate homesteads and claiming two separate homestead exemptions, and then reconciling and moving back together after the bankruptcy is completed. Such a result is not in keeping with the purpose of the homestead exemption and runs counter to the beneficent policy of keeping the family together. While the Court has no evidence of such abuse or fraud *in this case*, a holding that married debtors may claim separate exemptions would open this Pandora's box. This the Court declines to do.[41] In short, the "liberal construction" of the statute advocated by debtors here does not advance the aim of the homestead exemption and is contrary to the plain language of

---

apart, could not each claim separate homestead exemption on different properties where they resided); *In re Rabin*, 359 B.R. 242 (9th Cir. BAP 2007) (Under California law, same-sex debtor couple treated as a married couple and must share a single homestead exemption).

[41] The Court recognizes that had the debtors been divorced on the date of the bankruptcy petition, each would have been entitled to claim a homestead exemption under Kansas law, assuming they each filed a bankruptcy case and otherwise met the requirements of the homestead exemption statute.

-13-

the statute.

   **B.    *In re Hall*[42]**

The Court has carefully read *In re Hall* recently handed down by its colleague Judge Karlin. At the outset, it appears that Judge Karlin was careful to limit her decision to the unique facts of that case, noting that it was a "rare situation[ ]."[43] She also cautioned that the creation of separate homesteads by married debtors could in some circumstances lead to strategic ploys to defraud or defeat rights of creditors, but found no such evidence in that case.[44]

The facts in *Hall* were as follows. The debtors filed a joint chapter 7 petition in September of 2006. At the time they filed, they jointly owned a 1.33 acre tract within the city limits of Centralia, Kansas. A house and a mobile home were located on this tract, one bearing an address of 1104 4th Street and one having an address of 1104 ½ 4th Street. The wife and the debtors' two children occupied the house on the date of the filing and the husband occupied the mobile home. Due to a "substantiated finding of child abuse," the husband was forced to move out of the house in early 2004; he established the mobile home on the 1.33 acre tract as his separate residence. He was prohibited from residing with his family for a brief period of time.[45] There is no indication that debtors ever obtained a divorce.

Debtors sought to exempt as their homestead, both structures on the 1.33 acre tract, but

---

   [42] 395 B.R. 722 (Bankr. D. Kan. 2008).

   [43] *Id.* at 731.

   [44] *Id.*

   [45] According to the record in *Hall*, the husband could have moved back into the family home after April 19, 2004. But he resided exclusively in the mobile home since 2004, including on the date of the bankruptcy petition, and expressed his intent to remain in the mobile home "til I die . . .". 395 B.R. at 727.

-14-

conceded they were limited to one acre. The trustee objected and argued that the husband could not exempt both the mobile home and also his one-half interest in the house occupied by his wife and children and the wife could not exempt both the house and her one-half interest in the mobile home occupied by her husband. The trustee asserted she was entitled to a one-half interest in the mobile home and a one-half interest in the house. In analyzing this admittedly unique set of facts and the trustee's objection, Judge Karlin stated:

> First, the Court must determine whether, under Kansas law, married debtors filing a joint bankruptcy petition may each claim separate tracts of property as their homestead. In other words, is there any set of facts under which a married couple can retain two homesteads? If so, the Court must then determine whether, under the facts of this case, the mobile home located at 1104 ½ 4th Street should be treated as a separate tract of property, or whether it should simply be considered an outbuilding or guest house connected to, and part of, the main house located at 1104 4th Street.[46]

Judge Karlin answered the first question affirmatively, relying primarily on the principle that homestead exemption claims are liberally construed in favor of debtors. She also cited other exemptions where both husband and wife are permitted to separately claim an exemption, "even though the statutory authority for the exemption does not specifically provide for two exemptions for married couples."[47] This Court respectfully disagrees with the latter reasoning because it reads the statutory language describing the personal property exemptions differently. As the Trustee pointed out here, personal property exemptions are *expressly* granted to "[e]very person residing in this state," without regard to marital status.[48] Contrast this with the constitutional and statutory grant of "*A* homestead . . . ."

---

[46] 395 B.R. at 729.

[47] *Id.* at 730-31 where the personal property exemption at K.S.A. 60-2304 is cited as an example.

[48] KAN. STAT. ANN. § 60-2304.

-15-

Judge Karlin thus concluded:

> Given the policy considerations this Court must utilize when determining exemption issues, as well as the treatment of other Kansas exemptions, the Court finds that married debtors may claim separate homesteads provided they can establish that both tracts of property qualify as a homestead.[49]

This Court believes the facts of *Hall* are markedly different from the facts of the case before it and compel a different conclusion. The *Hall* debtors' intent to permanently reside on separate dwellings is more palatable given the fact that they had in fact lived in separate residences on the 1.33 acre tract of land for more than two years before filing bankruptcy, lending credence to the debtors' claim of permanency. Here, George's establishment of a separate homestead occurred within a matter of weeks of filing bankruptcy. The cause that led to establishment of the husband's separate homestead in *Hall* was involuntary. Here, George's decision to move out of the marital home was voluntary. Unlike the debtors in *Hall,* debtors' claims of exemption here involve separate claims of homestead exemption on noncontiguous property; the two homesteads are 115 miles apart. The debtors in *Hall* conceded that they could not exempt the .33 acres and therefore remained within the one acre limit in § 60-2301. *Hall* involves a single tract of land, while this case involves two separate, noncontiguous tracts of land in different counties. Here, the debtors' claim of exemption will consist of more than two acres within city limits, well beyond the one acre limit. For all of these reasons, and the Court's interpretation of the statutory language employed in § 60-2301, the Court concludes that *Hall* is factually distinguishable and therefore declines to follow it under the factual circumstances of this case.

II.     **The Stay Relief Motion**

---

[49] 395 B.R. at 731.

-16-

Case 08-11663    Doc# 67    Filed 03/11/09    Page 16 of 18

Bank of America moved to lift the automatic stay with respect to the Kinsley property. Both the Trustee and debtor George objected. George confessed that he has made no payments since May of 2008, allowing the arrearage to grow, and was waiting to see if he would be allowed to claim the Kinsley property exempt before resuming his mortgage payments. The Trustee objected that there appears to be equity that would be available to the unsecured creditors should this Court deny George's exemption of the property as a homestead. As set out below, this Court sustains the Trustee's objection to both debtors' exemptions, but will reserve to the debtors a short period of time in which to designate a single homestead. Because there appears to be equity in the Kinsley tract, and if the debtors do not designate it as their homestead, the Trustee should be given a sufficient period of time in which to market and sell the property free and clear of liens, if he determines that to be in the best interest of the creditors. Therefore, the motion for stay relief should be temporarily denied pending (1) the debtors' designation of a homestead tract; and (2) the Trustee's timely determination whether the property should be sold.

Conclusion

The Trustee's objection to the debtors' claim of homestead exemptions is SUSTAINED. Bank of America's motion for relief from the automatic stay is temporarily DENIED.

The debtors will be given ten (10) days from the entry of this order in which to designate either the Lakin property or the Kinsley property as their homestead by filing an amended Schedule C containing the designation with this Court. If the debtors claim the Kinsley property exempt, only the single acre upon which the dwelling house is erected will be exempt and the eight (8) contiguous acres that exceed the one acre limit will be subject to surrender to the Trustee for administration, subject to the Bank's interest in the property. The Trustee shall have ten (10) days from the date of

the designation in which to determine whether to administer the eight (8) non-exempt acres for the benefit of the estate and to so notify the Court and the Bank. If he decides not to administer the eight (8) non-exempt acres, Bank of America will be granted stay relief to take such action as it deems appropriate to realize upon its security interest in both the exempt and the non-exempt portions of the Kinsley tract. The Trustee shall further be entitled to administer the non-exempt Lakin property for the benefit of the estate, subject to the rights of the mortgage lien holder. The debtors shall surrender the Lakin property to the Trustee within ten (10) days from the date of designation.

If the debtors claim the Lakin property exempt, the Trustee shall have ten (10) days from the date of designation in which to determine whether to administer the Kinsley tract as a whole. If the Trustee notifies the Court and Bank of America of his intention to administer, the Bank's motion for stay relief will lie in abeyance for a period of 60 days. If, after 60 days, the Trustee has not received an enforceable contract for the sale of the Kinsley tract, the stay shall be deemed lifted and Bank of America may then proceed with its foreclosure action on the Kinsley property as set forth above.

IT IS SO ORDERED.

# # #